CHARLES J. SCHUCK, Judge.
The claim in this matter presents a very novel as well as interesting question involving the treatment of inmates in a reformatory and the extent to which the state would be liable, if at all, for the torts of an escapee from such reformatory. The claimant was a resident of Taylbr county, West Virginia, living in close proximity to the boy’s reformatory at Pruntytown. On Sunday the eighth day of March 1942, the claimant was attending services at the Pruntytown Baptist Church and had traveled from his home to the church in his automobile. During the services the automobile was parked on the church property and while so parked was stolen by one Eugene Money, then a lawfully committed inmate of the state industrial school for boys and who had on the day in question escaped from the said institution and stolen claim *199 ant’s automobile. Money drove the said automobile to Clay county, in West Virginia, and in so doing ruined the motor in said car and causing it to be abandoned after which claimant was obliged to pay for having the automobile returned to his home, all of which together with the loss of the spare wheel and tire and the labor required in repairing the car entailed an expense of $171.74, for which claim is made against the state board of control.
On the afternoon of the day of his escape Money pretending to be ill was allowed to remain in the dormitory where he had been sleeping, while the other boys were taken to their evening meal. There were approximately eighty-five boys kept in this dormitory at the time of the escape. The evidence shows that the escape was made by Money’s tieing together certain bed sheets and passing out of a window through a comparatively small opening, and dropping to the ground approximately 35 feet below. The main door or gate leading to the dormitory from the halls of the building in question was securely locked and did not afford any means of escape. One keeper or commander was in charge of the dormitory at the time of the escape. Under these circumstances the question presented here is whether or not those in charge of the school in question were guilty of such negligence as would make the state liable for the tort committed by Money and for the damages that followed his illegal and felonious act in stealing the automobile in question. Money was afterward tried in the circuit court of Taylor county for the felonious act of stealing and taking away the car and upon his plea of guilty was subsequently committed to the state penitentiary.
Were the authorities guilty of such negligence as to make the state liable in damages for Money’s act?
Under the laws of our state, chapter 28, (Michie’s code section 2701), the state board of control is given authority to make such rules and regulations for the management and conduct of the industrial school together with the instructions and discip *200 line dealing with the manner and disposition of the boys of the school as may be deemed proper. In turn, of course, the superintendent and attendants of the school combine to carry out the instructions with reference to the management of the institution and the boys confined therein, and no doubt seek to carry out those ideas which will best bring about the reformation of the boys sent to or confined in the institution in question. In fact the testimony shows that at the time the escape in question took place the school was being operated in compliance with the recommendations of the national bureau of child welfare; that two or three inspections of the institution had been made by federal inspectors and consultants previous to the time of the escape in question and that the management of the school was following the recommendations that had been made by such federal consultants and seeking to carry into effect the recommendations which no doubt had for their purpose the ultimate reformation of boys sent to the institution.
While the decisions concerned with the care, custody, and management of inmates of this type are few so far as they relate to liability for the acts of escapees are concerned, it would seem that unless the authorities directly participated in the escape by a breach of duty apparent at the time, that neither the state nor the department involved would be liable.
The testimony reveals that the officer in charge of the dormitory in question relied on the statements of Money that he was ill and allowed him to' retire to his bed and miss his evening meanwhile the other boys were being taken to the dining room. The only avenue of escape was that effected by Money himself. The testimony reveals that no such escape had been effected from this particular room at any time before, in the history of the school. The window in question through which he escaped was small containing an opening of 12 by 24 inches; it would hardly be expected that one of Money’s size, weighing about 145 pounds would attempt an escape in the manner in which it was accomplished and furthermore the window in question being located approximately 35 feet *201 above the ground would seem'to make an escape highly improbable. Under all the circumstances can it be maintained that the officer in charge was guilty of a breach of duty and so negligent as to make the state board of control liable for the tort that was committed by Money after his escape. Wc do not think so. We have in mind, of course, that Money had made several escapes before but not from the room in question and not at a time when he was surrounded by the same restraining influence or conditions as were present at-the time that he effected his escape on the day in question.
No doubt there are many who feel that the same restraining instrumentalities should be used at the state industrial school that may be used in our penal institutions; that the window in question, or the windows generally, of the dormitory should have been sufficiently barred to prevent such an escape and that all necessary means should be employed to confine the boys to the institution to which they were committed by reason of their acts, crimes, or incorrigibility. However, it must be borne in mind that we are dealing with a reformatory, an institution in which incorrigible boys are placed with the hope that the application of the modern methods now employed will ultimately bring about the necessary reformation and the restoration to good citizenship of the boy or boys involved. Escapes will take place by reason of the move lenient methods now employed as compared to the sterner and more strict discipline used in the past, but may it not be well argued that the methods which are now sanctioned by all authorities have in the final analysis brought about greater reformation and consequently are more beneficial to the state and nation as a whole than those that were employed in the past and which perhaps may have prevented, if still in use, the escape in question.
In Kuhns v. Fair decided October 20, 1942, by our State Court of Appeals (W. Va.) 22 S. E. (2d) 455, the Court held:
“The warden of the State penitentiary is the lawful custodian of the convicts therein confined under *202 the direction of the Board of Control and is not personally liable for a tort committed by a convict, unless he directly participated in its commission by a breach of duty.”
The Kuhns case supra arose by reason of a collision between the plaintiff’s automobile and a prison truck being operated by a convict outside the prison walls and while engaged in operating the'said truck for the benefit of the state. Applying the rule laid down in this case it would seem that unless there is a direct breach of duty on the part of the authorities who are in cbntrol of the convict no recovery can be had. Obviously the master and servant rule does not apply.
Taking into consideration the circumstances and conditions surrounding the commission of the offense being considered by us we fail to find such negligence on the part of the superintendent or his attendants at the institution as would justify our holding the state department involved guilty of such negligence as would warrant the making of an award. We do not subscribe to the rule that the state department involved can at all times escape liability, but do insist that lack of reasonable care must be shown in each instance and that the negligence must be so extreme as to be directly the cause for the commission of the tort and thus place the responsibility squarely on the shoulders of the authorities involved. We therefore refuse an award.